464 So.2d 753 (1984)
TERREBONNE BANK & TRUST COMPANY
v.
Michael J. LACOMBE, d/b/a MJL Services.
No. 83 CA 1421.
Court of Appeal of Louisiana, First Circuit.
December 28, 1984.
Rehearing Denied February 21, 1985.
*755 Edward James Gaidry, Houma, for plaintiff-appellee.
Louis St. Martin, Houma, for defendant in reconvention-appellee.
Larry G. Main, Raceland, Patrick D. Breeden, Atty., New Orleans, for defendant-appellant.
Before COLE, CARTER and LANIER, JJ.
CARTER, Judge.
This is an appeal from the judgment of the trial court on an exception of "no right or cause of action," an exception of no cause of action, a motion for summary judgment, and a rule to compel answers to interrogatories.

FACTS
On March 18, 1981, Michael J. Lacombe, d/b/a MJL Services, (Lacombe) purchased a used Chevrolet pickup truck from L.J. Naquin, d/b/a N & N Auto Sales, (N & N). Lacombe and N & N executed a sale and chattel mortgage and a promissory note. The schedule of payments provided for thirty-six monthly installments of $202.13, with a total finance charge of $1,911.57. The mortgage and note were immediately assigned to Terrebonne Bank & Trust Company (Terrebonne).
Lacombe paid the first two installments on the note, but subsequently failed to make the remaining payments as provided in the mortgage and note. As a result, Terrebonne had the vehicle seized and sold under executory process. The sale of the vehicle did not yield an amount sufficient to satisfy the remaining indebtedness, and Terrebonne instituted a suit for deficiency judgment.
In response to Terrebonne's suit for deficiency judgment, Lacombe filed a reconventional demand against Terrebonne and a third party demand against N & N, alleging certain violations of the Motor Vehicle Sales Finance Act, as set forth in LSA-R.S. 6:951 et seq. Lacombe later amended his pleadings to assert a class action against Terrebonne and N & N.
Thereafter, N & N filed an "exception of no right or cause of action" contending that a class action was not available to Lacombe. Terrebonne moved for summary judgment, alleging that Terrebonne had no knowledge of any violation of the Act committed by N & N, that Terrebonne would *756 have declined to purchase the mortgage and note if it had known of the alleged violations, and that Terrebonne is not a seller of motor vehicles. Terrebonne later filed an exception of no cause of action, alleging that financial institutions are not required to comply with the provisions of the Act. Lacombe also filed a rule to compel Terrebonne to answer interrogatories and requests for production. Prior to a ruling by the trial court on the exceptions, motion, and rule, Terrebonne voluntarily dismissed with prejudice the suit for deficiency judgment.
The trial court, after a hearing on the exceptions, motion, and rule, rendered judgment dismissing all reconventional and third party demands of Lacombe against Terrebonne and N & N.[1] From this judgment, Lacombe appeals, assigning the following errors:
(1) The trial court erred in determining that N & N was not required to obtain a license as specified in the Motor Vehicle Sales Finance Act;
(2) The trial court erred in determining that Terrebonne's dismissal of its suit for deficiency judgment made it unnecessary to address Lacombe's claims against Terrebonne;
(3) The trial court erred in finding that the issue of a class action was mooted by Terrebonne's dismissal of its suit for deficiency judgment;
(4) The trial court erred in dismissing the class action because the dismissal was based upon an erroneous rule of law; and
(5) The trial court erred in not requiring defendants to answer the discovery request of Lacombe.

ASSIGNMENT OF ERROR NO. 1
LSA-R.S. 6:952(B) provides, in pertinent part, as follows:
No person shall engage in the business of a sales finance company or sales finance solicitor in this state without a license required by this Chapter.
A "sales finance company" is defined in LSA-R.S. 6:951(9) as:
[A] person engaged, in whole or in part, in the business of purchasing retail installment contracts from one or more retail sellers or in the business of lending money on promissory notes secured by liens on motor vehicles, where the proceeds of such loans are used to purchase, vest, or purchase and vest title in the buyer. The taking of the lien by a lender or any company, corporation, or association owned in whole or in part by the lender, within sixty days of the loan shall be conclusive proof that said loan was made within the scope of this Chapter and that said lender is, in fact, a sales finance company hereunder. The term includes, but is not limited to, a bank, trust company, or savings bank, if so engaged. The term also includes a retail seller engaged, in whole or in part, in the business of creating and holding retail installment contracts. The term does not include: (a) the pledgee of an aggregate number of such contracts to secure a bona fide loan thereon; (b) any finance company licensed under the Louisiana Small Loan Law on loans made within the scope of that law; (c) a duly licensed new car dealer which is not directly engaged in financing automobile sales; or (d) any federal or state chartered credit union. (emphasis added)
Lacombe contends that N & N is a sales finance company within the contemplation of LSA-R.S. 6:951(9). Lacombe reasons that N & N "created and held" the retail installment contract and, therefore, is required *757 to obtain a license under LSA-R.S. 6:952(B). Lacombe further contends that because N & N is required to, but does not have a license, N & N is subject to the penalties provided in LSA-R.S. 6:960.[2]
In construing laws, the meaning and intent of a sentence within a subpart of an act is determined by a consideration of the particular provision as a whole and of the statute in its entirety. A construction should be placed on the provision in question which is consistent with the express terms of the statute and with the obvious intent of the Legislature in enacting it. Gautreau v. Board of Electrical Examiners, 167 So.2d 425 (La.App. 1st Cir.1964). A careful reading of the Motor Vehicle Sales Finance Act reveals that it was enacted to regulate entities engaged in the business of loaning money and companies which warehouse or hold installment contracts.
The trial judge stated that "[t]here was no question in this case that N & N Auto Sales was not in the business of purchasing retail installment contracts, nor was it in the business of lending money on promissory notes secured by liens on motor vehicles." Although N & N "creates" retail installment contracts by selling vehicles and financing them with Terrebonne, it clearly does not "hold" the contracts for payment or collection. The Act provides that a retail seller that creates and holds retail installment contracts is a sales finance company. Since "and" is conjunctive as opposed to disjunctive, both must occur. Further, it is clear from a reading of the entire Act that "holds" is not used in the context of "holder" under the Uniform Commercial Code (LSA-R.S. 10:1-201 et seq.).
Clearly, since N & N was neither a lender nor a broker of retail installment contracts, N & N is not a sales finance company as defined in LSA-R.S. 6:951(9). Therefore, it follows that N & N is not subject to the penalty provisions of LSA-R.S. 6:960, and Lacombe has no cause of action against N & N. This judgment of the trial court is correct.

ASSIGNMENT OF ERROR NO. 2
Terrebonne is a sales finance company under LSA-R.S. 6:951(9), but LSA-R.S. 6:952(B) specifically excludes banks and other similar financial institutions from the licensing requirement. However, banks must comply with all the other provisions of the Act.[3]
*758 The trial court found that the mortgage and note forms, provided to N & N by Terrebonne, violated the Act in that they did not meet the specifications of the Act as to minimum type size.[4] We agree. A violation of the type size requirement may invoke the penalty provisions of LSA-R.S. 6:960(B)[5] barring recovery of "any finance charge, delinquency or collection charge on the contract."
Terrebonne's voluntary dismissal with prejudice of its demand for deficiency judgment prevents it from recovering any additional finance charges on the remaining unpaid balance; however, Lacombe's payments on the first two installments included payment of some finance charges. LSA-R.S. 6:960(B) clearly bars recovery of any and all finance charges. Therefore, we cannot agree with the trial judge that the issue of penalties became moot when Terrebonne dismissed its suit for deficiency judgment. See Sun Finance Co., Inc. v. Briscoe, 384 So.2d 555 (La.App. 4th Cir. 1980). The petition does state a cause of action under LSA-R.S. 6:960(B). However, in order to recover the finance charges already paid, Lacombe must prove the amount of the finance charges and the "willful" violation by Terrebonne of the provisions of the Act with regard to type size.
Although his petition does not state a cause of action against Terrebonne under LSA-R.S. 6:960(C), Lacombe's petition does state a cause of action under LSA-R.S. 6:960(B). The trial judge erred in sustaining Terrebonne's exception of no cause of action. E. Lionel Pavlo Engineering Co. v. State, 429 So.2d 454 (La.App. 1st Cir. 1983). Accordingly, the judgment of the trial court sustaining Terrebonne's exception of no cause of action is reversed.
Additionally, the trial judge granted Terrebonne's motion for summary judgment. Although a partial judgment on an exception of no cause of action cannot be granted, a partial summary judgment can be sustained. LSA-C.C.P. art. 966; Ricard v. State, 390 So.2d 882 (La.1980); Owens v. Martin, 430 So.2d 1248 (La.App. 1st Cir. 1983), affirmed on other grounds, 449 So.2d 448 (La.1984). Accordingly, we affirm a partial summary judgment against Terrebonne on the claim under LSA-R.S. 6:960(C) and reverse the granting of a summary judgment on the LSA-R.S. 6:960(B) claim.

ASSIGNMENT OF ERROR NOS. 3 AND 4
In his amended petition, Lacombe petitioned the trial court to certify his reconventional demand and his third party demand as a class action. In objecting to Lacombe's use of the class action device, N & N filed an exception of "no right or cause of action." The trial judge denied N & N's exception of no cause of action insofar as it purported, in this manner, to dispose of Lacombe's amended demand for a class action. The trial judge determined that the penalty provisions of the Motor Vehicle Sales Finance Act were inapplicable in the instant case because the Act did not apply to N & N and because Terrebonne had dismissed its suit for deficiency judgment. In refusing to certify the class, the trial judge applied the test enunciated in Caswell v. Reserve National Insurance Company, 234 So.2d 250 (La.App. 4th Cir. 1970), writ refused, 256 La. 364, 236 So.2d 499 (1970), and determined that Lacombe had not established the appropriateness of his claim for a class action.
*759 In the case sub judice, N & N sought to raise the issue of non-availability of the class action device by the peremptory exception urging objections of no right of action and no cause of action.
In Stevens v. Board of Trustees of Police Pension Fund, 309 So.2d 144, 152 (La. 1975), the Supreme Court observed with regard to raising the issue of the non-availability of the class action:
The exception urging no cause of action must be determined on the face of the pleadings. Elliott v. Dupuy, 242 La. 173, 135 So.2d 54 (1961). The exception urging no right of action is a threshold device to terminate a suit brought by one who has no interest in it. Wischer v. Madison Realty Co., 231 La. 704, 92 So.2d 589 (1957). Clearly, neither peremptory objection, as historically limited, is appropriate to raise the defense.
However, since "The function of the peremptory exception is to have the plaintiff's action declared legally nonexistent, or barred by effect of law", La.C.Civ.P. art. 923, the defense (if raised by an exception, Article 921) is of a peremptory nature. See La.C.Civ.P. art. 926, listing the five objections historically raised by the peremptory exception, but noting that the grounds "include, but are not limited to" them.
The First Circuit in Livingston P. Pol. Jury v. Ill. Cent. Gulf R., 432 So.2d 1027, 1030 (La.App. 1st Cir.1983), writ denied 437 So.2d 1137 (La.1983) concluded that objection to a class action could be raised by means of a peremptory exception and "[a]ll that the law demands is that at some point in the proceedings the opposing party must be given fair opportunity to question the availability of the class action."
In the instant case, a hearing was held on the objection to the availability of the class action. The parties were afforded an opportunity to present pertinent evidence. At the conclusion of the hearing, the trial court denied the exception on procedural grounds, but dismissed the class action based upon Terrebonne's dismissal of the suit for deficiency judgment and upon the holding of Caswell, supra. Procedurally, this was correct.[6] However, we have previously determined that Terrebonne's dismissal of its suit for deficiency judgment did not dispose of the issue of penalties under LSA-R.S. 6:960(B). Similarly, that dismissal does not make moot the question of the availability of a class action.
In Stevens, supra, the Caswell test employed by the trial judge in the case sub judice was rejected by the Supreme Court as being too stringent. Stevens and the subsequent cases of Williams v. State, 350 So.2d 131 (La.1977), State ex rel. Guste v. General Motors Corp., 370 So.2d 477 (La.1978), and McCastle v. Rollins Environment Services, 456 So.2d 612 (La.1984), set forth the proper guidelines for class action certification. Therefore, on remand, it will be necessary that the trial court reconsider Lacombe's claim for a class action against Terrebonne in light of McCastle, supra.

ASSIGNMENT OF ERROR NO. 5
Lacombe contends that the trial court erred in not requiring defendants to answer his discovery requests. Lacombe reasons that the information sought to be discovered pertained to the class action, and the trial court erred in determining that the dismissal of the class action made it unnecessary to compel discovery.
Because of our ruling in Assignments of Error Nos. 3 and 4 ordering reconsideration of the availability of the class action, it will also be necessary for the trial court to reconsider its denial of Lacombe's discovery requests.

CONCLUSION
For the above reasons, the judgment of the trial court sustaining N & N's exception *760 of no cause of action and dismissing Lacombe's claim against N & N is affirmed. The judgment of the trial court sustaining Terrebonne's exception of no cause of action is reversed. We also affirm a partial summary judgment against Terrebonne on the claim under LSA-R.S. 6:960(C) and reverse the granting of a summary judgment on the LSA-R.S. 6:960(B) claim. Furthermore, the trial court is directed, on remand, to reconsider Lacombe's claim for a class action against Terrebonne and to reconsider Lacombe's motion for discovery in light of our ruling herein and the ruling of McCastle, supra and the cases cited therein. The costs of this appeal are divided equally between Lacombe and Terrebonne.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED.

On Application for Rehearing.
PER CURIAM.
TBT contends in this application for rehearing that the trial court could not find as a fact that the print size in the TBT mortgage and note forms violated the provisions of La.R.S. 6:956(B). For purposes of the peremptory exception pleading the objection of no cause of action filed by TBT, this position is correct because that objection must be determined from the face of the pleadings. La.C.C.P. art. 931. However, for purposes of the summary judgment, Lacombe filed the affidavit of Vhores Trosclair which purported to show the print size violation alleged. This affidavit was filed in response to an affidavit submitted by TBT which claimed compliance with the statute. In argument at the hearing on the summary judgment in the trial court, counsel for TBT conceded that one or two paragraphs in the forms "do not meet the eight point type requirement", and "technically, there is in fact a violation of, it's 956 or 57." The trial court observed in its reasons for judgment this was a violation of a provision of the law. In our original opinion, we observed the trial court found the forms provided by TBT violated the law by failing to meet its minimum type size and agreed with this observation. For purposes of the ruling on the motion for summary judgment, this observation is correct. La.C.C. art. 2291; Cheatham v. City of New Orleans, 378 So.2d 369 (La. 1979).
NOTES
[1] Although not specifically stated in the formal judgment, it appears from the written reasons for judgment that the trial judge granted Terrebonne's motion for summary judgment and sustained Terrebonne's exception of no cause of action, insofar as they applied to Lacombe's claim for damages based on violations of the Motor Vehicle Sales Finance Act. The trial judge denied N & N's exception of no cause of action insofar as it purported to dispose of Lacombe's amended demand for a class action. However, the trial judge apparently sustained the exception, in part, as it applied to the merits because N & N was not subject to the Motor Vehicle Sales Finance Act.
[2] LSA-R.S. 6:960 provides in pertinent part as follows:

A. Any person who shall wilfully and intentionally violate any provision of this Chapter or engage in the business of a sales finance company in this state without a license therefor as provided in this Chapter shall be guilty of a misdemeanor and upon conviction shall be punished by a fine not exceeding five hundred dollars or by imprisonment for not to exceed six months in jail, or both.
B. Any seller or holder, willfully violating R.S. 6:956 or R.S. 6:957, shall be barred from recovery of any finance charge, delinquency or collection charge on the contract.
C. Any seller, holder or sales finance solicitor who fails to timely purchase a license as herein provided may be ordered by the administrator to pay a penalty of fifty dollars in addition to the regular license fee herein provided, and any person who, without previously purchasing a license hereunder, engages in the business of seller, holder or sales finance solicitor shall pay the buyer, in addition to paying to the administrator the regular license fee and penalties provided, a sum equal to two times the total interest, finance charge, documentary and any other charges originally computed and added to the principal amount financed, plus reasonable attorney's fees to be determined by the administrator or, in event of suit, by the district judge before whom the case is tried, and in addition, said violator shall pay an additional penalty of one hundred dollars to the administrator for each such transaction made in violation of the provisions of this Chapter.
[3] LSA-R.S. 6:952(B) provides, in pertinent part, as follows:

[N]o bank, trust company, savings bank, or savings and loan association, authorized to do business in this state shall be required to obtain a license under this Chapter, but shall comply with all the other provisions of this Chapter. All federal or state chartered credit unions are excluded from the provisions of this Chapter.
[4] LSA-R.S. 6:956(B) provides:

The printed portion of the contract, other than instructions for completion, shall be in at least eight point type. The contract shall contain in a size equal to at least ten point bold type:
(1) A specific statement that liability insurance coverage for bodily injury and property damage caused to others is not included, if that is the case; and
(2) The following notice: "Notice to the Buyer: Do not sign this contract before you read it or if it contains any blank spaces. You are entitled to an exact copy of the contract you sign."
[5] See Footnote 2, supra.
[6] We note that during the 1984 legislative session, La.C.C.P. art. 593.1 was enacted which allows the court, on its own motion, to determine whether an action may be properly maintained as a class action.