295 So.2d 36 (1974)
Terry K. STEVENS, Plaintiff-Appellant,
v.
The BOARD OF TRUSTEES OF the POLICE PENSION FUND OF the CITY OF SHREVEPORT et al., Defendants-Appellees.
No. 12293.
Court of Appeal of Louisiana, Second Circuit.
April 23, 1974.
Rehearing Denied May 28, 1974.
Writ Granted August 28, 1974.
*37 Pugh & Nelson by Robert G. Pugh, Shreveport, for plaintiff-appellant.
John Gallagher, Ronald J. Achee, Dixon & Thomas by Neil Dixon, Shreveport, for City of Shreveport, L. Calhoun Allen, Jr., and J. W. Easom, defendants-appellees.
Before AYRES, BOLIN and HALL, JJ.
En Banc. Rehearing Denied May 28, 1974.
AYRES, Judge.
Plaintiff, a former member of the Shreveport Police Department, instituted this as a "class action" pursuant to LSA-C.C.P. Art. 591 et seq., against the abovenamed defendant, its chairman, and its secretary, not only on his own behalf but on behalf of all other former policemen of the City, alleged to be approximately one hundred in number, who terminated their employment after the effective date of Act 641 of 1968 (LSA-R.S. 33:2351, et seq.) which created the Police Pension Fund of the City of Shreveport.
The object of this action is to require the Board of Trustees of the Police Pension Fund, by mandamus, to reimburse each of the former policemen for the alleged compulsory contributions of six percent of their salaries formerly assessed and paid into the pension fund.
To plaintiff's action, defendants filed exceptions of no cause and of no right of actions as to the proceedings instituted as a class action, no cause of action as to plaintiff's individual action, and an exception to the alleged unauthorized use of summary proceedings.
The exceptions of no cause and of no right of action appertaining to the class action were sustained. From the judgment, plaintiff suspensively appealed.
For a cause of action, plaintiff alleges that:
"Petitioner institutes this proceeding individually and on behalf of all former police officers of the City of Shreveport, who terminated their employment after the effective date of Act 641 of 1968, enacted La.R.S. 33:2351, et seq., as the Police Pension Fund of the City of Shreveport.

*38 "Plaintiff and the class of former police officers of the City of Shreveport which he represents are approximately 100 in number and are located in many different parts of the State of Louisiana and in the states other than Louisiana, and therefore are so numerous as to make it impracticable for all of them to join or to be joined as parties.
"The interests and rights sought to be implemented in this proceeding are common to all members of the class in that each member of the class made compulsory contributions equal to six percent (6%) of his annual salary to the Policemen's Pension Fund of the City of Shreveport, and, contrary to the intent, spirit, and provisions of the act creating said pension fund, no member of this class received a refund of his compulsory contributions. Petitioner alone made compulsory contributions in excess of $1,300.00. The claims of the class approximate in excess of $100,000.00.
"The plaintiff will fairly insure adequate representation of all former police officers of the City of Shreveport who terminated their employment after the effective date of Act 641 of 1968, their beneficiaries and survivors, since plaintiff has employed competent attorneys to institute this proceeding; and there are questions of law or fact common to each individual composing this class.
"Petitioner is informed, believes, and therefore alleges that defendant has, under the provisions of La.R.S. 33:2351, et seq., assessed each member of the Police Department upon his employment by the City of Shreveport an amount equal to six percentum (6%) of his annual salary and deducted said amount monthly; and that no police officer upon resigning or terminating his employment as a police officer for the City of Shreveport, for whatever reasons, received a refund of his compulsory contribution; and that by refusing to refund said compulsory contribution, defendant has violated plaintiffs' constitutional right to due process of law."
It may be next noted that as a prerequisite, LSA-C.C.P. Art. 591, so far as is pertinent herein, provides:
"A class action may be instituted when the persons constituting the class are so numerous as to make it impracticable for all of them to join or be joined as parties, and the character of the right sought to be enforced for or against the members of the class is:
"(1) Common to all members of the class; ...."
By LSA-C.C.P. Art. 592, authority is granted:
"One or more members of a class, who will fairly insure the adequate representation of all members, may sue or be sued in a class action on behalf of all members."
Briefly stated, plaintiff alleges he contributed to the aforesaid Police Pension Fund until he terminated his employment after the year 1968; that his contributions were not refunded to him upon the termination of his services and have not yet been refunded; and that the failure of the defendant to make a refund is an actionable wrong, a denial of due process, for which he seeks redress on behalf of himself and all members of the class of which he is a member.
The only issue before the court at this time is the propriety of plaintiff's attempted utilization of the procedures provided for a class action. It appears appropriate to note that the Louisiana statute relative to class actions is much more restricted than Federal Rule 23. In the official comments, paragraph (c), under LSA-C.C.P. Art. 591, this difference and the scope of the article of the Louisiana Code of Civil Procedure are clearly set forth:
"Under federal practice Fed. Rule 23 covers three separate and distinct types *39 of class actions: the true class action, the hybrid class action, and the spurious class action.
"In the true class action, if the representation of the members of the class is adequate, the judgment concludes not only the representative parties, but all other members of the class who are not joined as parties. In strict theory the judgment in the hybrid class action concludes only the representative parties and persons who subsequently join in the action, but, as a practical matter, since there is a disposition of the property involved under the judgment, the latter may be prejudicial to those members of the class who do not join in the action. In the spurious class action, only the parties who actually join in the action are concluded by the judgment, and their rights would not be affected by their failure to join. `It is an invitation and not a command performance.' 3 Moore's Federal Practice (2d ed.) 3443 (1948).
"Both the hybrid and the spurious class actions are permissive joinder devices which are badly needed in federal practice where the jurisdiction of the court often depends upon diversity of citizenship. Joinder of all members of the class of the original complaint, or by intervention, would otherwise deprive a federal court of jurisdiction in all cases where a plaintiff and a defendant are citizens of the same state. But through the use of this permissive joinder device, the representative plaintiffs or defendants can be so selected as to afford the necessary diversity of citizenship; and once the court has acquired jurisdiction over the class action, it has ancillary jurisdiction to permit the subsequent joinder, or to adjudicate the rights of, all other members of the class. Hence, under its ancillary jurisdiction, the federal court may render judgment on the claims of those members of the class who subsequently join in the action.
"There is no need for either the hybrid or the spurious class action in Louisiana, and therefore this Code provides for only the true class action." (Emphasis supplied.)
In Caswell v. Reserve National Insurance Company, 234 So.2d 250, 255-256 (1970writ refused), the Court of Appeal for the Fourth Circuit of this State explained the distinctions between the "hybrid" and "spurious" class actions, which are not permitted in Louisiana, and the "true" class action which is authorized in this State. The court observed that:
"A distinguishing feature is that in a `true' class action the claims are `joint' or `common' whereas in a `hybrid' or `spurious' class action the claims are `several'. See Barron and Holtzoff, Federal Practice and Procedure, verbo, Rule 23, Class Actions § 562.
"The true class action is one in which except for the use of the class action the joinder of all interested parties would be necessary for the enforcement of the joint or common right. The use of the class action is sanctioned when the persons in the class having the joint or common right are so numerous that joinder is impracticable if not impossible. The above-cited case of Verdin v. Thomas [191 So.2d 646 (La.App., 1st Cir., 1966)] is a good example of a proper use of the class action under our law. The descendants of common ancestors obviously had a joint and common interest in establishing the title of their common ancestor from whom their respective interests in the property derived. They were so numerous as to make joinder as necessary parties utterly impracticable, if not impossible. The judgment was conclusive as to all and res judicata would bar any further litigation of the common right." (Emphasis supplied.)
In Caswell v. Reserve National Insurance Company, supra, there was an attempt by a health-and-accident insurance policyholder to maintain a class action on behalf of all policyholders similarly situated contesting the defendant's refusal to continue *40 policies in effect except on the condition of a particular exclusionary endorsement. In affirming the action of the trial court in sustaining defendant's exceptions of no right and of no cause of action, insofar as it purported to be a "class" action, the court stated:
"The alleged facts and circumstances presented in this case fail to meet the test of a true class action. The most that can be assumed from plaintiff Caswell's allegations is that there probably are other policyholders whose contract of insurance was on a printed form similar to that initially issued to him and that as to some of them the company might have exercised its option to refuse renewal or to renew with exclusions. The facts in each such case, if any, will differ in many respects and a judgment on Caswell's demands could not conceivably conclude the rights of other policyholders. At most they have a common interest in a question of law, a decision concerning which would have value as a judicial precedent only. All policyholders interested in the common question of law may join in Caswell's suit, but they are not required to do so. This might be categorized as a `spurious' class action, but it certainly is not a `true' class action authorized by LSA-C.C.P. art. 591."
See, also, Veal v. Preferred Thrift & Loan of New Orleans, Inc., 234 So.2d 228 (La. App., 4th Cir., 1970). There plaintiff, individually and on behalf of others similarly situated, sought a refund of sums denominated and collected as "late charges." The court affirmed the judgment of the trial court sustaining defendant's exception of no right or cause of action as to the manner in which the action was brought, that is, as a class action. In discussing the question as to whether or not plaintiff might maintain a class action, the court stressed:
"In Caswell v. Reserve National Insurance Company, La.App., 234 So.2d 250, we have discussed the application of LSA-C.C.P. arts. 591 and 592 which provide for class actions on a restricted basis in Louisiana. We concluded in that case that the attempted procedure did not meet the test of a true class action. For the reasons there given we must reach the same conclusion in this case. To avoid needless duplication of opinions, we adopt the opinion in the Caswell case insofar as it is relevant and particularly insofar as it discusses the procedure by class action under LSA-C.C.P. arts. 591 and 592.
"There may be, and indeed there quite probably are, other persons who have been or may be subjected by this defendant to `late charges' or `extension fees' of which plaintiff Veal complains, but we cannot conceive of any judgment which might be rendered in this case which would be conclusive of the rights of such persons. As in Caswell, this suit may be an invitation to other persons similarly situated to join the action, each on an individual basis for the adjudication of such `several' right as each may have against the common defendant. Only such parties as actually join the action will be concluded, and failure or success of the action will not affect the rights of any party not joined. A decision of the question of law common to all persons who have borrowed money from this defendant or any other lending agency which imposes late charges or extension fees, will, at most, have only such effect as that usually given to judicial precedent."
Plaintiff in the instant case makes no claim or demand which is common to all members of the class which he seeks to represent. No other member of the class is an indispensable party to his suit. His claim, independent of and separate from those of all other claimants, is presented in the form of a demand for reimbursement of funds allegedly wrongfully refused him upon his termination of service as a policeman. His right is not one held in common with the others of the so-called "class," *41 though the same or similar issues of law would be involved in actions taken individually by other policemen.
Authorities cited from Federal jurisdictions are inapposite here. Differences in the statutes under which they are brought from the statute governing the instant case have been noted. The Federal rules appear to require only that questions of law or of fact be common to the members of the class. To the contrary, our statute requires that the character of the right sought to be enforced in a class action be common to all members of the class.
In White v. Board of Trustees of Teachers' Retirement System, 276 So.2d 714 (La.App., 1st Cir., 1973writ refused), also cited by plaintiff, the question of a class action does not appear to have been an issue.
For the aforesaid reasons, we conclude that under the provisions of our Code of Civil Procedure, with respect to the institution of class actions, only true class actions are authorized; that in such actions claims must be joint or common; that true class actions are those in which, except for the use of class actions, joinder of all interested parties would be necessary for the enforcement of the joint or common right. From the alleged facts and circumstances of this case, the conclusion is, therefore, inescapable that each of the former police officers of the City of Shreveport may separately and individually, and without the joinder of others similarly situated, pursue whatever right he has, if any, to recover contributions contributed to the Police Pension Fund. Hence, in view of the rules of law and the jurisprudence to which we have referred, and from which we have quoted, a class action is inappropriate and may not be pursued in this instance.
The judgment appealed is accordingly affirmed at plaintiff-appellant's costs.
Affirmed.